IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **DONALD SMITH** | § | |
| | § | |
| *Plaintiff* | § | CIVIL ACTION NO. 6:09cv151 |
| | § | |
| VS. | § | |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| and **EDWARDS TRANSPORTATION** | § | |
| **LLC d/b/a MESA MAIL SERVICES,** | § | |
| **LLC** | § | |
| | § | |
| *Defendants* | | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR SUMMARY JUDGMENT**

_____

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Donald Smith, and presents this Plaintiff's Response to Defendant United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Summary Judgment (Docket #35) and would respectfully show the following:

**I.**

**STATEMENT OF THE CASE**

Plaintiff does not dispute Defendant's basic statement of the case. Without relating the same here at length, Plaintiff was injured on the first day of his employment with Edwards' Transportation. Specifically, Plaintiff was pulling a 600+ pound laden "APC" (all

purpose container to coin Defendant's moniker) from the back of an Edwards truck onto a raised scissor lift (properly classified as a type of scaffold, as detailed below) when Plaintiff and the APC fell off the back side of the lift. The crushing weight of the APC caused Plaintiff to suffer, among other injuries, a compression fracture of one of his vertebrae.

It is undisputed that no safety chain, chord, guardrail, or other safety device was used at the time of the incident. Plaintiff would further aver that the accident happened in the early hours of the morning, and that he saw no warning signs or any type of safety device which would have prevented him or the cart from falling off the back of the lift.

## II.

### SUMMARY OF ARGUMENT/RESPONSE TO ISSUES PRESENTED

1. Whether the Plaintiff's action against the United States is Jurisdictionally Barred by the Discretionary Function Exception to the FTCA's limited waiver of sovereign immunity?

   1a. THE PLAINTIFF'S ACTION IS NOT BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION BECAUSE THE USPS RETAINED OPERATIONAL CONTROL OVER THE LIFT AND THE PREMISES AT ISSUE.

2. Whether the Plaintiff's action against the United States is jurisdictionally barred by the contractor exception to the FTCA?

   2.a THE PLAINTIFF'S ACTION IS NOT BARRED BY THE CONTRACTOR EXCEPTION TO THE FTCA BECAUSE PLAINTIFF'S THEORIES AGAINST THE USPS ARE INDEPENDENT OF EDWARDS' NEGLIGENCE AND THE EXCEPTION DOES NOT RELIEVE THE GOVERNMENT FROM ITS DUTIES TO ITS CONTRACTORS'

      EMPLOYEES.

3. Whether Summary Judgment should be granted in favor of the United States on the Premises Liability claim because there is no evidence as to one or more essential elements of that claim?

   3a. PLAINTIFF'S SUMMARY JUDGMENT PROOF LISTED HEREIN DEMONSTRATES ISSUES OF MATERIAL FACT REGARDING THE ESSENTIAL ELEMENTS OF HIS PREMISES LIABILITY AND NEGLIGENCE CLAIMS.

### III.

### EXHIBITS

Plaintiff attaches or incorporates the following exhibits to this response as evidence:

Exhibit A:   Affidavit of Donald Smith

Exhibit B:   Handwritten Statement of Postmaster Travis Landers

Exhibit C:   Three (3) photographs of the subject lift produced by Defendant

### IV.

### STATEMENT OF MATERIAL FACTS

Plaintiff would stipulate to Defendant's statement of material facts 1-12, but disputes paragraph 13 as Plaintiff asserts that no such safety chord was present at the time and place that he fell. *See Exhibit A*.

Plaintiff would add that Defendant never contractually delegated to Edwards any responsibility for the subject scissor lift or its safe operation or training.

## V.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**A.  The Court does have subject matter jurisdiction because the USPS's obligation to keep its premises safe is not a discretionary function or duty.**

As a threshold matter, it is clear that the USPS did not delegate to Edwards any responsibility for the lift or its safe operation.  In fact, the USPS's contract with Edwards is completely silent on the issue of unloading, or the use of governmental property to unload, except in reference to "Postal Service Owned Pallet Jack Use".[1]  There, the USPS specifically delegates the responsibility to train employees on the use of **manual** pallet jacks to the contractor, but spells out the fact that "suppliers are not authorized to use postal owned electric pallet jacks since such equipment requires specialized apparel and training." *Id.*  The contract is otherwise silent as to the use of postal equipment or the specific electric scissor lift at issue.

Plaintiff does not believe that the evidence shows that the USPS contractually delegated the responsibility for safety, training, or use of the scissor lift to Edwards or anyone else.  The USPS, therefore, must have retained such responsibility itself, and its Motion regarding discretionary function should be denied for this reason alone.  Assuming that the Court does find a contractual delegation in this regard, the discretionary function exception to the FTCA does not apply in any event.

---

[1] Defendant's Exhibit "1" (the Contract), Section B.8 at p. 138.

"An absolutist interpretation of the discretionary function is improper. It is not sufficient for the government to demonstrate that some choice was involved in the decision-making process. That showing could be made in almost every case." *J.H. Rutter Rex Mfg. Co., Inc. v. United States*, 515 F.2d 97, 99 (5th Cir. 1975), *citations omitted*.

The Fifth Circuit has held that there is a "distinction between those acts of the government which are 'discretionary' within the meaning of section 2680(a) and those which are 'operational' and therefore reachable under the Tort Claims Act." *Aretz v United States*, 604 F.2d 417, 427 (5th Cir. 1979), *quotes in original*. Here, the USPS claims that it contractually delegated "safety" to Edwards. This delegation does not relieve the USPS's responsibility to maintain its premises and to remediate dangerous conditions and activities. Additionally, nowhere can the USPS point to a contractual delegation of the right to control the subject scissor lift or over the post office premises, upon which the lift sits.

Cases cited by Defendant are clearly distinguishable. In *Guile* and *Winters*[2], the governmental agencies (the Army and NASA respectively) delegated actual control over the subject premises and equipment in addition to safety issues to their respective contractors, placing the contractor in the best position to monitor conditions. In *Duff v. United States*, the Eighth Circuit considered a case wherein a woman sued the Air Force when contractors in an adjacent room varnishing floors failed to provide proper ventilation.[3] The Court explained

---

[2] *Guile v. United States*, 422 F.3d 321 (5th Cir. 2005). *Winters v. United States*, 127 F.Supp.2d 814 (S.D. Tex. 2001).

[3] 999 F.2d 1280, 1281 (8th Cir. 1993).

that delegation to a contractor's superior skill and knowledge of a particular process and operation was within the exception, but that it would still find jurisdiction "if the government also retained and exercised control over the project's safety." *Id.*  In that case, there is no mention that the Air Force was varnishing floors, provided the varnish, equipment, etc. The Court also made specific note of the trial court's finding that the Air Force never exercised any day-to-day supervision of its contractor.  *Id.*  In that case, the injurious conditions were caused by the contractor; in the case at bar, it is the USPS-controlled lift that is at issue.

The facts *sub justice* are therefore analogous to those before the court in *Aretz*, and are on "all-fours" with the case of *Indian Towing Co., Inc. v. United States*, 350 U.S. 61 (1955). In that case, the Supreme Court considered whether or not the United States could be held liable under the FTCA when the Coast Guard failed to maintain a lighthouse, causing a barge to run aground. *Id.*  The Court recognized that the decision to place a lighthouse was discretionary,

> "But once [the Coast Guard] exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act."

*Id.* at 68. In the case at bar, the decisions to retain Edwards and to place a scissor lift on its premises may be discretionary, but it is the USPS's responsibility to maintain the lift and, under Texas law (as explained below), to prohibit the lift's use or terminate Edwards'

contract when it was clear that Edwards employees repeatedly used the lift in an unsafe manner.

**B. The Court's subject matter jurisdiction is not limited in this case by the "Independent Contractor" exception because it is the USPS's acts and omissions at issue, not its contractor's.**

Plaintiff is clearly not seeking to impose liability on the USPS for Edwards' failure to train and provide a safe workplace. Rather, Plaintiff seeks to impose liability against the USPS for (1) failing to include any kind of safety feature to stop the APC from rolling off the end of the lift or warning to that effect; and (2) for failing to terminate Edwards' contract when the USPS had to have known, in the exercise of reasonable diligence, that Edwards' was not operating safely. Although the United States cannot be held vicariously responsible for the acts of independent contractors, it is clear that employment of an independent contractor **can not** "… insulate[] the United States from liability for its own employees' independent acts of negligence which occur in connection with the work of an independent contractor." *Aretz*, 604 F.2d at 427.

Defendant cites *Cunningham*[4] to instruct the proper application of the independent contractor exception and for the proposition that the USPS has no duty to provide a safe working environment. In fact, the court in that case made factual findings which determined the outcome. Specifically, that court found: "8. The Court finds that the credible evidence

---

[4] *Cunningham v. United States*, 827 F.Supp. 415 (W.D. Tex. 1993).

at trial established that the Defendant did not fail to keep the dock area adequately lit and/or free of obstructions." *Id.* at 416. The court explained that the decision to include chains on the wheel chocks was made in an effort to keep the dock area safe. *Id.* The facts of the *Cunningham* case are what led to its outcome. *Cunningham* did not involve summary judgment; that opinion followed a full evidentiary trial to the bench, and is a recitation of the Judge's findings.

Because Plaintiff's causes against the USPS rely only on the acts and omissions of that agency as described above, and do not seek to impute liability, the "independent contractor" exception to the FTCA does not apply to limit Plaintiff's case.

## VI.
## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Defendant has also filed its "No-Evidence" Motion for Summary Judgment ("MSJ"), alleging that Plaintiff has no evidence to support any element of his claims. Defendant recognizes in footnote "79" of its MSJ that a non-movant is not required to produce evidence demonstrating a material issue of fact as to every element of his case, but Defendant goes ahead and demands Plaintiff does just that. Defendant's Statement of Facts, together with admissions made throughout its MSJ and Motions to Dismiss clearly indicate a dispute over whether or not the lift was safe, and Plaintiff would point to the following evidence and argument in further support of his claims:

**Premises Liability**

Premises owners and occupiers owe a duty to keep their premises safe for invitees against known conditions that pose unreasonable risks of harm. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). The duty is to "take whatever action is reasonably prudent under the circumstances to reduce or to eliminate the unreasonable risk from that condition." *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983).

> "A condition presenting an unreasonable risk of harm is defined as one in which there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen. It follows that an owner or occupier of land can be charged with knowledge and appreciation of a dangerous condition on his premises only if from a reasonable inspection a reasonably prudent person should have foreseen a probability that the condition would result in injury to another."

*Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex.1970), *citations omitted*.

Generally, "scissor lifts" like the one at issue are regulated by OSHA as a type of "scaffold" or "mobile scaffold" if on wheels.[5] Plaintiff is not claiming that OSHA regulations have any specific bearing on this case, as the lift in question was not in operation above the triggering height. Rather, Plaintiff brings this fact to the Court's attention because it **is** a piece of heavy equipment which is not regularly used by the general public.

There is little dispute that Defendant recognizes the need for a safety chain or chord to prevent, what Defendant admits are 600+ pound carts, from rolling off the elevated lift. Defendant's Exhibit "2" is directed solely at the issue of whether or not the lift had adequate

---

[5] See, generally 29 C.F.R. 1926.451.

safety features. Attachments "2" and "3" to that same Exhibit purport to show a safety chord attached to the lift and a warning sign advising the use of handrails and chains.

Plaintiff alleges quite simply that, on the day of the incident, the safety chord was not present. *See Plaintiff's Exhibit A*. Defendant knows that the purpose of the lift is to unload APC's, each weighing in excess of 600 pounds. *See, e.g., Defendant's Motions to Dismiss, page 3, paragraph 1*. As Plaintiff has repeatedly pointed out, Defendant was in control of its premises at all times, and had USPS employees present to manage the loading dock. *See Defendant's Exhibit "2", Declaration Of Donna Veeser*.[6] It is certainly foreseeable that without a safety chord, chain, or removable guardrail a person or APC could easily roll off the lift, and that if a person falls from the lift, or if an APC falls onto a person, significant injury will result. Finally, Plaintiff has filed his medical records which indicate a causal nexus between the incident and his fractured back.

**Negligence**

An employer who is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 358 (Tex.1998). In its contract with Edwards, the USPS required, *inter alia*, that each Edwards vehicle mush have a power lift tailgate with a lift capacity of no less

---

[6]Ms. Veeser swears that she has been employed at the Lone Oak Post Office as a Distribution Clerk for 13 years, and was present and working at that position on the day of the incident.

than 2500 pounds from ground level.⁷ The Edwards vehicle at issue had no such working lift, which is why Plaintiff and his co-worker were using the USPS property. Nothing in the contract gave Edwards' employees the right to use the lift; rather, the contract obviously contemplates that Edwards' truck lifts would be used to unload the APCs.

As stated above, the contract specifically prohibits Edwards' employees from using post office equipment which requires proper training and clothing, yet it is clear that post office employees, including the Postmaster Travis Landers, allowed Edwards to use the lift without any instruction, verification **or delegation** of training, safety, etc. In fact, in Postmaster Landers' handwritten statement, he posits "Johnny [Bushnell] loaded the lift and raised it to truck height never attaching roll guard. This appeared to be S.O.P. for him, as he never even reached or ask [sic] if I wanted it attached."⁸ The pictures taken by Postmaster Landers of the Edwards employee demonstrate this.⁹ The Postmaster even took a picture of the chain locking or "safety guard" ring and notes, "ring covered in spider webs due to lack of use."¹⁰

---

⁷Defendant's Exhibit "1" (the Contract) Section B.2(c)(1)(b) at p. 128.

⁸Plaintiff's Exhibit "B" (Postmaster Landers' statement) at p. 33.

⁹Plaintiff's Exhibit "C" (Postmaster Landers' pictures) at pp. 18 and 19.

¹⁰*Id.* at p. 11.

## VII.

## CONCLUSION

In sum, although Defendant's policy decision to install the subject scissor lift may have been at its discretion, Defendant cannot thereafter wash its hands of the lift's maintenance and safe use.  It could have delegated the responsibility for training and use of the lift to its contractors, or prohibited them from using it altogether since its contractors' trucks were required to have adequate tailgate lifts, just as it prohibits their use of electric pallet jacks.  As Plaintiff has demonstrated factually and legally sufficient evidence to proceed to trial, Plaintiff respectfully requests that the Court deny Defendant's Motions to Dismiss and for Summary Judgment.  Plaintiff hereby requests the opportunity to replead by amendment or supplement if the same be necessary to cure any such related deficiency.

Plaintiff further respectfully requests all other relief to which he may show himself justly entitled in law or in equity.

Respectfully Submitted,

/s/ DG
**DARREN GRANT** *Lead Attorney*
State Bar No. 24012723
**MATTHEW B. FLANERY**
State Bar No. 24012632
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
(903) 596-8080  (Telephone)
(903) 596-8086  (Facsimile)
Darren@GFTexas.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been delivered to all counsel of record this 13th day of October 2009 via U.S. Certified Mail - Return Receipt Requested.

/s/ DG
**DARREN GRANT**